```
        IN THE UNITED STATES DISTRICT COURT
      FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
```

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
|     Plaintiff | : | |
| | : | |
|     vs. | : | CRIMINAL NO. 1:CR-06-304-01 |
| | : | |
| ALBERT CASTRO, | | |
|     Defendant | : | |

*M E M O R A N D U M*

I. *Introduction*

Defendant, Albert Castro, has filed a pro se motion under 28 U.S.C. § 2255 challenging his conviction and sentence. He makes the following claims. First, his guilty plea was not knowing and intelligent because his lawyer led him to believe that he was not pleading guilty to a drug offense of any kind. Second, his lawyer was ineffective in not moving to dismiss the 18 U.S.C. § 924(c) charge as Defendant did not meet all the elements of that offense. Third, counsel refused to take an appeal. Fourth, the government violated the terms of Defendant's proffer agreement by allowing the probation office to use admissions he made at his guilty-plea hearing and proffer interview to increase his sentence.

On December 15, 2008, a hearing was held on the motion, where Defendant was represented by counsel.

II.   *Background*

    A.   *Original Proceedings*

On April 12, 2007, Defendant executed a written plea agreement, agreeing to plead guilty to counts I, XIV, and XVI of the second superseding indictment.[1] Count I of that indictment charged him with a violation of 18 U.S.C. § 922(a)(6), making false written statements to obtain firearms in that he falsely represented that he was the true purchaser of the firearms when he was actually purchasing them for someone else. Count XIV charged him with a violation of 18 U.S.C. § 924(c), possessing numerous firearms in relation to a drug-trafficking crime for which he may be prosecuted in a court of the United States, namely, possession with intent to distribute crack cocaine. Count XVI charged him with a violation of 18 U.S.C. § 922(a)(5), transferring a firearm to a person out of state.

These offenses were described in paragraph 1 of the plea agreement, with count XIV being described as charging Defendant with "possessing firearms in furtherance of drug trafficking." (Doc. 75 ¶ 1). The plea agreement also described the maximum sentence for each offense, ten years for count I, life imprisonment for count XIV, and ten years for count XVI, (*id.*), for a total sentence of life plus twenty years. (*Id.*, ¶ 4).

---

[1] The agreement incorrectly refers to count XIV as count XXII.

Defendant acknowledged that the court was not a party to the agreement and was not bound by any recommendation that he or the government might make concerning the sentence to be imposed. (*Id.*, ¶ 21). "Thus, the Court [was] free to impose upon the defendant any sentence up to and including the maximum sentence of imprisonment for life . . . ." (*Id.*). Furthermore, Defendant agreed that he could not withdraw his guilty plea if he was dissatisfied with the court's sentence or if it declined to follow any of the parties' recommendations as to sentencing. (*Id.*, ¶ 22).

The plea agreement also provided the following. The government would move for a three-level reduction in Defendant's offense level if Defendant adequately demonstrated acceptance of responsibility. (¶ 11). Defendant would cooperate, and the government would move for a downward departure under U.S.S.G. § 5K1.1 if he provided substantial assistance. (¶ 13). The government would not use against Defendant self-incriminating information he provided while he was cooperating "in determining the applicable guideline range except to the extent provided in this agreement." (¶ 14). The government would not use "any statements made by the defendant during the cooperation phase of this agreement . . . against the defendant in any subsequent prosecutions unless and until there is a determination by the Court that the defendant has breached this agreement. However, the United States will be free to use at sentencing in this case any

of the statements and evidence provided by the defendant during the cooperation phase of the agreement." (¶ 20).

The defendant signed the agreement under a paragraph stating: "I have read this agreement and carefully reviewed every part of it with my attorney. I fully understand it and I voluntarily agree to it." His attorney also signed it under a paragraph stating: "I am the defendant's counsel. I have carefully reviewed every part of this agreement with the defendant. To my knowledge my client's decision to enter into this agreement is an informed and voluntary one."

In May 2007, a change-of-plea hearing was held. The prosecutor noted that Defendant had agreed to plead guilty to counts I, XIV, and XVI of the second superseding indictment. (Doc. 143, transcript of change-of-plea hearing, pp. 2-3).[2] She described the count XIV offense as "possessing firearms in furtherance of drug trafficking." (*Id.*, p. 3). She also mentioned the maximum terms of imprisonment for each offense and that count XIV had a minimum term of five years. (*Id.*, pp. 2-3).

The prosecutor also estimated that Defendant's guideline range would be "somewhere around nine years." (*Id.*, p. 3). In connection with Defendant's sentence, the court advised him:

> You heard [the prosecutor] recite the maximum penalties for each of the three offenses. Your

---

[2] During the proceedings, count XIV was incorrectly referred to as count XXII. This error was corrected by the order of May 24, 2007, which granted Defendant's motion to amend/correct the record.

>> sentence will be determined following the
>> preparation of a pre-sentence report when the
>> court will be aware of all the facts that go
>> into determining the appropriate sentence.
>> It's the government's estimation at this time
>> that you could be facing a sentence in the
>> range of nine years, but there's no assurance
>> of that at this point. Do you understand that,
>> Sir?

(*Id.*, pp. 6-7). Defendant replied, "Yes." (*Id.*, p.7 ).

The prosecutor outlined the government's case that would have been presented at trial. In regard to count XIV, she stated that "the defendant possessed firearms while he was distributing crack cocaine and in furtherance of this distribution of crack cocaine." (*Id.*, p. 8). The court asked Defendant if this was "a fair summary," and Defendant responded "yes." (*Id.*).

In June 2007, a presentence report (PSR) was prepared. The PSR noted that "cooperating witnesses" reported that Defendant, along with others, "packaged two to three 'eight-balls' of crack cocaine every two to three days into smaller quantities for resale in York, Pennsylvania. . . . for at least a six month period . . ." (Doc. 75, ¶ 23). The PSR also set forth in paragraph 22 Defendant's description of the firearms he illegally supplied across state lines.

Under U.S.S.G. § 3D1.2(b), counts I and XVI were grouped for sentencing purposes. Under U.S.S.G. § 2K2.1(c)(1), Defendant's drug quantity was used to establish his base offense level for

these counts.[3] Based on the statements of the cooperating witnesses in paragraph 23, the drug quantity was calculated as at least 150 grams but less than 500 grams of crack cocaine, for a base offense level of 34. (PSR ¶ 32). Three points were deducted for acceptance of responsibility for a total offense level of 31. Defendant's criminal history category was calculated to be IV. This produced a guideline range of 151 to 188 months, but since the statutory maximum sentence was fifteen years, the guideline range became 151 to 180 months.

As pertinent here, Defendant's counsel made two objections to the PSR. First, he objected to the drug quantity, saying it should only be five to twenty grams. Second, he objected that Defendant's admissions in paragraph 22 violated the proffer agreement as these admissions were used to set the guideline range. He also made a request that any sentence take into account the 100:1 disparity between crack cocaine and powder cocaine.

At sentencing on August 15, 2007, the court used a drug quantity of fifty to 150 grams, based on the parties' prehearing stipulation, for a base offense level of 32. As noted below, the stipulation resulted from the efforts of defense counsel.[4]

---

[3] Count XIV was treated separately because this count carried a mandatory sixty-month sentence to run consecutively to any other sentence.

[4] The government also notes that the drug quantity was established before sentencing by agreement of the parties. (Doc. 144, p. 9).

Subtracting three points for acceptance of responsibility gave Defendant a total offense level of 29. Combined with a criminal history category of IV, this gave Defendant a range of 121 to 151 months.

Defense counsel moved the court for a downward departure in the criminal history category from IV to III on the ground that category IV overstated the seriousness of Defendant's criminal history. In line with his objections, he also moved for a variance based on the disparity in crack- and powder-cocaine sentencing. The court agreed with both motions. It also granted the government's motion for a downward departure based on substantial assistance. The court concluded that the departure and variance resulted in a guideline range of 56 to 85 months. Defendant was sentenced to a total term of 126 months' incarceration, consisting of 66 months' on count I, 33 months on count XVI, to run concurrently with count I, and 60 months on count XIV, as required by statute to run consecutively to the sentences on the two other counts.

    B.   *The 2255 Hearing*

At the 2255 hearing, Defendant testified concerning his guilty plea and the section 924(c) offense. He stated that his lawyer read him the plea agreement before he signed it but did not really explain the section 924(c) offense. Defendant signed the agreement because counsel told him it was his best plea. Before

7

the PSR was prepared, he complained to his lawyer about the section 924(c) charge, and his lawyer told him he was guilty of the offense because witnesses saw him carrying a gun in the presence of drug dealers.

He pled guilty to the offense because his lawyer said it was a "logistical" thing, but he felt deceived because counsel did not tell him that a guilty plea to the 924(c) offense would bring in the amount of drugs sold by others, not himself, to set his sentence. He was not unsatisfied with the government's estimate at the hearing of a nine-year sentence because he thought that nine years would be the maximum sentence he would get, but he thought his actual sentence was going to be four to five years. After the PSR was prepared, he was upset because the drug amount (150 grams but less than 500 grams of crack cocaine) had driven the sentencing calculations; he had sold guns, not drugs.

His lawyer testified that he discussed with Defendant each of the elements of each offense he was charged with, and that Defendant agreed he had committed the section 924(c) offense as understood in the law. Defendant did deny being a drug trafficker but was informed about aiding and abetting. Defense counsel asserted Defendant did not plead guilty just because counsel told him to; he pled guilty because he understood that he was guilty. There was nothing "logistical" about the guilty plea.

As to the PSR's guidelines calculation, counsel was surprised by how high it was. He thought the quantity of guns

8

Defendant had sold would outweigh the drug amount; Defendant had represented to him that any drug amount was small. Also, Defendant had always told him that he had no prior convictions. (Defendant explained that he said this because he thought only "felonies" would count toward a sentencing calculation.)[5]

Defendant testified that counsel told him he would get four to five years. Defendant's girlfriend testified that she thought Defendant would get five to six years. His uncle testified that the sentencing range jumped up and down, from a low of six to a high of ten years. Counsel testified he never told anyone the sentence would be five to six years. His own estimate was about nine years, and he made it clear to everyone that the sixty-month sentence on the section 924(c) offense would be consecutive to any other sentence.

After receiving the PSR, counsel spoke with the probation officer who had prepared the report concerning whether information from Defendant's proffer had been used to set the drug amount. He also spoke to the prosecutor about the drug weight, leading to the stipulated, lower drug amount used at sentencing.

There was also testimony about the claim that Defendant requested an appeal but that counsel failed to file one. Defendant testified that he asked counsel to take an appeal while he was in

---

[5] Defendant's criminal history consisted of two convictions for possession of marijuana, one conviction for disorderly conduct, one conviction for harassment, and one conviction for criminal mischief.

the marshal's lockup after he was sentenced. Counsel did not respond to that request. Defendant tried to contact him by phone a couple of days after sentencing and later he wrote letters. Defendant's fiancee testified that she told counsel Defendant wanted to appeal and to discuss his case with him.

Counsel denied having a conversation with Defendant's fiancee about an appeal. He also testified that he and Defendant did discuss an appeal after sentencing and that Defendant agreed with him that he had no viable issues to raise on appeal. Counsel sent Defendant a letter on the day of sentencing, which, among other things, confirmed "[b]ased upon our conversations this morning, both before and after sentence was imposed, [counsel would] take no action to perfect the appeal without further instructions from you." (Govt. Ex. 2). The letter was sent to the Adams County Prison, where Defendant had been confined, but was returned on August 23, 2007, as undeliverable. Counsel sent it again but has no record of where it was sent. However, the letter did not come back as undeliverable. Counsel also made a note of a telephone conversation he had with Defendant on August 21, 2007. (Govt. Ex. 3). Among other things, counsel recorded that Defendant did not mention an appeal.

On September 4, 2007, counsel did receive a letter from Defendant requesting that his legal materials be sent to his

10

uncle. (Govt. Ex. 4). This letter did not mention an appeal.[6] The first time counsel heard from Defendant about an appeal was in a letter received from Defendant on January 31, 2008. (Govt. Ex. 5). In the letter, Defendant stated he was writing "about the situation with my appeal," and that Defendant had tried unsuccessfully to contact counsel by phone before sending him a few letters.

III.  *Discussion*

Defendant's first claim is that his guilty plea was not knowing and intelligent because his lawyer led him "to believe . . . that he was not pleading guilty to a drug offense of any kind." (Doc. 137, 2255 motion, attachment).

As the government points out, technically, the claim would fail for the simple reason that Defendant did not plead guilty to a drug offense. But as Defendant made clear at the hearing, and as the government notes in its brief, the claim really goes to the section 924(c) firearms offense. Specifically, it is a claim that Defendant's guilty plea to all the counts was invalid because his lawyer did not advise him of the element involving drug trafficking on the section 924(c) offense. Unbeknownst to Defendant, this allowed drug quantities to drive the sentencing range for the offense under 18 U.S.C. § 922(a)(6),

---

[6] Defendant testified that he did not mention an appeal because at that point he was pursuing a 2255 motion.

11

making false written statements to obtain firearms, and the offense under 18 U.S.C. § 922(a)(5), transferring a firearm to a person out of state.

We agree with the government that this claim lacks merit. To begin with, Defendant was aware that the offense involved drug trafficking.[7] He signed a plea agreement with count XIV being described as charging Defendant with "possessing firearms in furtherance of drug trafficking," and he agreed at his change-of-plea hearing with the prosecutor's description of the offense, that "the defendant possessed firearms while he was distributing crack cocaine and in furtherance of this distribution of crack cocaine." Additionally, we credit his lawyer's testimony that he explained the elements of each offense to Defendant and that Defendant understood what the offense involved.

Further, Defendant's guilty plea is not invalid because he did not know that once he pled guilty to the section 924(c) offense, the drug quantity from that offense would drive the sentencing range on the other two offenses. Both in the plea agreement and at the change-of-plea hearing, Defendant was advised of the maximum sentences that could be imposed for these offenses, ten years on each. In the plea agreement, he was advised that the

---

[7] As pertinent here, the elements of a section 924(c) offense are: (1) the defendant committed the crime of distribution of crack cocaine; and (2) defendant knowingly possessed a firearm in furtherance of this crime. *See* Third Circuit's Criminal Jury Instructions § 618.924A.

12

court was free to impose the sentence it believed was appropriate, up to the maximum, and he agreed that he would not attempt to withdraw his plea because he was dissatisfied with the sentence imposed. At the change-of-plea hearing, the court cautioned him that the nine-year guideline range was only an estimate and that his real sentence could only be determined after the PSR was prepared and "the court [was] . . . aware of all the facts that go into determining the appropriate sentence." In these circumstances, Defendant's argument against the validity of his plea is meritless. *See United States v. Schweitzer*, 454 F.3d 197, 202-03 (3d Cir. 2006)(in part, guilty plea was not invalid when the defendant was advised of the maximum penalty that could be imposed and the court's discretion in imposing sentence).

Defendant's second claim is that his lawyer was ineffective in not moving to dismiss the 18 U.S.C. § 924(c) charge as Defendant did not meet all the elements of that offense. This claim lacks merit as Defendant has not specified what elements of the crime he has not satisfied, *see United States v. Thomas*, 221 F.2d 430, 437 (3d Cir. 2000)(2255 motion containing only vague and conclusory allegations may be disposed of without further investigation by the district court), even by way of a reply brief. In any event, at the change-of-plea hearing, the prosecutor described the offense and its essential elements, and Defendant agreed that this description was accurate.

13

Defendant's third claim is that counsel refused to take an appeal. If counsel refused to take an appeal after Defendant requested one, this would be a Sixth Amendment violation. *Solis v. United States*, 252 F.3d 289, 294 (3d Cir. 2001), but we reject this claim. We credit counsel's testimony that after the conversation in the lockup following sentencing, Defendant had agreed counsel was to take an appeal only if Defendant requested one, but Defendant never did, only mentioning an appeal in a letter received from Defendant on January 31, 2008.

Defendant's fourth claim is that the government violated the terms of Defendant's proffer agreement by allowing the probation office to use admissions he made at his guilty-plea hearing and proffer interview to increase his sentence.[8] We reject this claim for the simple reason, as the government points out, that the probation office did not use Defendant's statements during the cooperation phase to increase his sentence. As noted above, Defendant's guideline range in the PSR on counts I and XVI was driven by his drug quantity, established by statements from "cooperating witnesses," (PSR ¶ 23), not from any statements Defendant made. Additionally, the consecutive sentence on count XIV was mandated by statute.

---

[8] Defendant characterized this as a jurisdictional argument.

IV.   *Conclusion*

     We will deny the 2255 motion.  Our order will also deny a certificate of appealability, based on the analysis in this memorandum. However, Defendant is advised that he has the right for sixty (60) days to appeal our order denying his 2255 motion, *see* 28 U.S.C. § 2253(a), and that our denial of a certificate of appealability does not prevent him from doing so, as long as he also seeks a certificate of appealability from the court of appeals.  *See* Federal Rule of Appellate Procedure 22. We will issue an appropriate order.

                                                 /s/William W. Caldwell  
                                               William W. Caldwell  
                                               United States District Judge

Date: December 22, 2008

```
              IN THE UNITED STATES DISTRICT COURT
            FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


UNITED STATES OF AMERICA,      :
         Plaintiff
                               :

         vs.                   :   CRIMINAL NO. 1:CR-06-304-01

                               :
ALBERT CASTRO,
         Defendant             :
```

*O R D E R*

AND NOW, this 22nd day of December, 2008, it is ordered that:

    1. The motion (doc. 132) and amended motion (doc. 137) under 28 U.S.C. § 2255 are denied.

    2. A certificate of appealability is denied.

    3. The Clerk of Court shall close this file.

                                               /s/William W. Caldwell
                                               William W. Caldwell
                                               United States District Judge